1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EMERALD CITY PET RESCUE,

           Plaintiff,

    v.

MELODY BENNER-SNYDER,

           Defendant.

Case No. C25-532-RSM

ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT

## I.      INTRODUCTION

This matter comes before the Court on Plaintiff Emerald City Pet Rescue's Motion for Default Judgment. Dkt. #20. Having considered the record in this case, including Defendant Melody Benner-Snyder's failure to appear and the Clerk of Court's entry of an Order of Default (Dkt. #13), the Court grants Plaintiff's Motion and enters a permanent injunction against Defendant, as described below.

## II.      BACKGROUND

Plaintiff, a Washington nonprofit that rehabilitates and rehomes animals, owns the federal registered trademarks "Emerald City Pet Rescue" and "Emerald City Pet Rescue Love Can Save Lives" [the "Emerald City Pet Rescue Marks"]. *Id*. at ⁋⁋ 10-11.

Since "at least January 26, 2024," Defendant has operated as an animal boarding and adoption service provider under the mark "Emeral City Rescue Coalition." *Id*. at ⁋⁋ 24, 31.

"Upon information and belief, Defendant operates her business as a for-profit sole proprietor[,]" she "has not registered any trade names with the Washington State Department of Revenue, nor has she filed as a business entity or charity with the Washington Secretary of State[,]" and she "operate her business without a Washington business license." *Id*. at ¶¶ 25-27. Using statements such as "you can make a difference," "help support our mission," and "ways you can help us, help them," Defendant's website encourages payments through "a series of links to cash-transfer platforms such as Venmo, Cashapp, and Zelle" to pay Defendant "rather than any non-profit entity." *Id*. at ¶ 28.

Plaintiff alleges that Defendant's use of "Emerald City Rescue Coalition" violates federal and state law because it is confusing, misleading, deceptive, and has caused and continues to harm Plaintiff's reputation and customer service. *Id*. at ¶¶ 53-73. Plaintiff lists numerous communications from customers and others, as well as at least one negative Google review, confusing Plaintiff with Defendant. *Id*. at ¶¶ 37-43.

On September 17 and October 25, 2024, Plaintiff's counsel sent cease-and-desist letters to Defendant but received no response. *Id*. at ¶ 45-46. On November 27, 2024, Plaintiff emailed a draft of its Complaint and called Defendant but received no response. *Id*. at ¶ 47.

On March 26, 2025, Plaintiff filed its Complaint, alleging claims for trademark infringement and unfair competition under the Lanham Act and violations of the Washington Consumer Protection Act ("CPA"). Dkt. #1 at ¶¶ 53-73. After several failed service attempts, Plaintiff served Defendant with the summon and complaint on May 13, 2025. Dkt. #11 at 2.

On June 9, 2025, Plaintiff filed a motion for default. Dkt. #11. Defendant has not filed or served an answer, appeared in this action, contacted Plaintiff or Plaintiff's counsel, or otherwise demonstrated any intent to participate in this action. Accordingly, on June 12, 2025, the Clerk entered an Order of Default against Defendant. Dkt. #13. Plaintiff filed the instant

Motion on July 17, 2025. Dkt. #20.

### III.    DISCUSSION

The Court has personal jurisdiction over Defendant because, taking the factual allegations in the Complaint as true, Defendant is domiciled in and operates her business at issue here in Washington. Dkt. #1 at ¶ 4. The Court also has subject matter over Plaintiff's claims pursuant to 28 U.S.C. §§ 1338(a) and 1367(a) because Plaintiff has alleged violations of the Lanham Act and a related state-law claim. *Id*. at ¶ 3.

#### A.  Default Judgment

Given the entry of default in this case, the Court may use its discretion to enter a default judgment. *See* Fed. R. Civ. P. 55(b); *see also* LCR 55(b). When examining the merits of a default judgment, the Court takes well-pled allegations in a complaint as true. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Though default judgments are "ordinarily disfavored, the Court analyzes seven factors to determine whether default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Those factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim(s); (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*.

In applying this test, the Court finds Plaintiff's Complaint to be well-pled and therefore takes its allegations as true.

#### (1) Possibility of Prejudice to Plaintiffs

The Court finds that there is a great possibility of prejudice to Plaintiff without a default judgment. Although Defendant was served, she has failed to defend, appear, or otherwise

participate in this action.  Therefore, without a default judgment, Plaintiff will have no remedy. *See Criminal Prods., Inc. v. Gunderman*, 2017 WL 664047, at *3 (W.D. Wash. Feb. 17, 2017).

**(2) Merits of the Substantive Claims and**

**(3) Sufficiency of the Complaint**

The second and third *Eitel* factors are "often analyzed together. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  After analyzing each of Plaintiff's claims, the Court finds that these factors support default judgment.

**a. Claims One and Two: Federal Trademark Infringement and Unfair Competition**

Plaintiff's first claim, trademark infringement, requires that Plaintiff establish (1) a protected interest in the mark and (2) the accused infringing party's use of that mark is likely to cause consumer confusion.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks."  *Dreamwerks Prod. Grp. Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Federal registration of a mark provides prima facie evidence of its validity, entitling the plaintiff to a strong presumption that the mark is protectable.  *See Yellow Cab. Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927-28 (9th Cir. 2005).

Plaintiff has established that it owns the Emerald City Pet Rescue Trademarks, thus it has a protected interest in these marks.  The Complaint alleges numerous instances of other businesses and customers mistakenly contacting Plaintiff and leaving Plaintiff a negative Google review in reference to Defendant's business.  *See* Dkt. #1 at ¶¶ 37-42.  Taking these allegations as true, the Court finds that Plaintiff has established that Defendant's business and advertisements using the similar "Emerald City Rescue Coalition" mark likely cause (and actually caused)

consumer confusion.

Regarding Plaintiff's unfair competition claim, "the elements of infringement and unfair competition are essentially the same; the rulings stand or fall together." *E. &J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.3 (9th Cir. 1992).  Because the Court has determined that Plaintiff adequately established a trademark infringement claim, Plaintiff has also established its unfair competition claim.

### b.  Claim Three: Violation of the CPA

"Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am.*, LLC, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).  Because the CPA claim analysis tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, Plaintiff has established its CPA claim.

### (4) Sum of Money at Stake

"In weighing this factor, courts take into account the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct." *Curtis*, 33 F. Supp. 3d at 1212 (quotations omitted).

However, other than statutory costs and attorney fees discussed below, Plaintiff seeks a permanent injunction, enjoining Defendant from: (1) "[s]elling, marketing, advertising, or promoting the Emerald City Rescue Coalition Mark or any other mark that is a confusingly similar variation or imitation" of Plaintiff's marks; (2) making representations that Defendant's services are connected with Plaintiff or Plaintiff's services; (3) "[u]sing or authorizing any third party" to "falsely" associate with Plaintiff; and (4) registering or applying for a mark or name

"consisting of or incorporating the Emerald City Rescue Marks or any other mark that infringes or is likely to be confused with" Plaintiff.  Dkt. #20-1, Proposed Order.

Under 15 U.S.C. § 1116(a), the Court may "grant injunctions according to principles of equity and upon such terms as the court may deem reasonable" in order to prevent trademark violations.  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).  The Washington CPA also allows for permanent injunctions to prevent violations.  *See* RCW 19.86.090.

When deciding whether to grant a permanent injunction, a court is engaging in "an act of equitable discretion" and must apply "traditional equitable principles" embodied in a four-factor test.  *eBay Inc.v. MercExchange*, LLC, 547 U.S. 388, 391 (2006).  Under that test, a plaintiff must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Id*.

The Court finds that Plaintiff has satisfied the above test.  First, Defendant's infringement has caused irreparable harm to Plaintiff's reputation through confused customers and bad business reviews.  Second, Plaintiff has shown, as well as Defendant through her lack of participation in this case, that money damages alone are insufficient to prevent further infringement and harm.  Third, the balance of hardship favors Plaintiff, who is seeking to enjoin Defendant from engaging in further illegal conduct that only benefits Defendant.  Finally, an injunction protecting Plaintiff from further harm and infringement on Plaintiff's trademarks will serve the public interest.  Accordingly, this factor weighs in favor of an entry of default judgment, and the Court will grant Plaintiff's request for a permanent injunction.

**(5) Possibility of Dispute as to Material Facts**

Given the record here, as well as Defendant's lack of appearance, the Court finds little possibility of a dispute concerning material facts.

**(6) Excusable Neglect**

The Court is satisfied that Defendant was served with notice of this case, and there is no evidence that Defendant's failure to appear is due to excusable neglect. Accordingly, the Court finds that this factor weighs in Plaintiff's favor.

**(7) Policy Favoring Decisions on the Merits**

The Court agrees with Plaintiff that, where, as here, Defendant's failure to appear makes a decision on the merits "impractical, if not impossible," any preference for deciding cases on the merits does not preclude the Court from entering a default judgment. Dkt. #20 at 6 (quoting *Burciaga v. AAJP 2, Inc.*, No. C23-0981-KKE, 2025 WL 459882, at *6 (W.D. Wash. Feb. 10, 2025).

**B. Damages**

Plaintiff seeks costs and attorney fees in the amount of $23,920, as well as a permanent injunction against Defendant. Dkt. #20 at 6. Plaintiff's requested attorney fees of $20,000 represent the majority of the work by Plaintiff's counsel, Ms. Lewis, "the primary author" of Plaintiff's motions." *Id*. at 7; *see* Dkt. #21, Lewis Decl., at ¶¶ 4-7 (describing over 70 hours of work by 3 attorneys, amounting to over $36,000 in total fees). Plaintiff's requested costs of $3,920 include the $405 filing fee, the $228 first process server fees, and the $2663 private investigator fees. *Id*.

Fed. R. Civ. P. 54(d) allows the prevailing party to be awarded "costs," as does the Lanham Act. *See* Fed. R. Civ. P. 54(d); 15 U.S.C. § 1117(a). The Ninth Circuit has upheld awards of attorneys' fees under 15 U.S.C. § 1117(a) 'solely because, by entry of default judgment, the district court determined, as alleged in [plaintiff's] complaint, that [defendant's]

acts were committed knowingly, maliciously, and oppressively, and with an intent to . . . injury [plaintiff].'" *Studio 010 Inc. v. Digital Cashflow LLC*, No. 2:20-CV-01018-DGE, 2023 WL 6793974, at *12 (W.D. Wash. Oct. 13, 2023) (quoting *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008)). For the reasons discussed above, the Court finds that the above costs and fees are reasonable and will grant Plaintiff's request.

## IV.    CONCLUSION

Having reviewed the instant Motion, declarations, and remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff Emerald City Pet Rescue's Motion for Default Judgment, Dkt. #20, is GRANTED.

2. Defendant Melody Benner-Snyder is enjoined from:

   a. Selling, marketing, advertising, or promoting the Emerald City Rescue Coalition Mark or any other mark that is a confusingly similar variation or colorable imitation of Emerald City Pet Rescue's Marks;

   b. Making or displaying any statement, representation, or depiction that is likely to lead the public or trade to believe that (i) Defendant Benner-Snyder's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Emerald City Pet Rescue; or (ii) Emerald City Pet Rescue's services are in any manner approved, endorsed, or otherwise connected with Defendant Benner-Snyder;

   c. Using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade

dress that falsely associates such business, goods, and/or services with Emerald City Pet Rescue or tend to do so; and

d.  Registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Emerald City Pet Rescue Marks or any other mark that infringes or is likely to be confused with Emerald City Pet Rescue's Marks or Emerald City Pet Rescue.

3.  The Court AWARDS Plaintiff $23,920.00 in attorneys' fees and costs, as well as post-judgment interest at a rate fixed under 28 U.S.C. § 1961.  Defendant Benner-Snyder is liable for this amount, to be paid no later than thirty (30) days from the date of this Order.

DATED this 6th day of October, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE